**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**DOLLY BEATRICE BURNSIDE**                                                    **PLAINTIFF**

**vs.**                                                    **CIVIL ACTION NO.  2:12-cv-0068-SAA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SSA**                                                    **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the

decision of the Commissioner of Social Security denying the application of plaintiff Dolly

Beatrice Burnside for period of disability (POD) and disability insurance benefits (DIB) under

Sections 216(I) and 223 of the Social Security Act.  Docket 9, p. 12, 103-109.   Burnside filed

applications for POD and DIB on January 30, 2009, alleging disability beginning December 21,

2008.  Docket 9, p. 103-109.  The Commissioner denied her claim initially and on

reconsideration.  Docket 9, pp. 24-56, 59-61, 65-66.  Plaintiff challenged the denial of benefits

and filed a request for a hearing before an Administrative Law Judge (ALJ).  Docket 9, p. 65-66.

She was represented by an attorney at the administrative hearing on October 13, 2010.  Docket 9,

p. 21-53.  The ALJ issued an unfavorable decision on November 5, 2012 (Docket 9, p. 9 - 17),

and after it reviewed additional information submitted by the plaintiff, the Appeals Council

denied her request for review.  Docket 9, p. 1-5.  Plaintiff filed the instant appeal, and it is now

ripe for review.  Because both parties have consented to have a magistrate judge conduct all the

proceedings in this case under  28 U.S.C. § 636(c), the undersigned has the authority to issue this

opinion and the accompanying final judgment.

<u>I.  FACTS</u>

Plaintiff was born on July 16, 1956 [Docket 9, p. 10]; she was fifty-two years old at the alleged onset of her disability and fifty-four years old on the date of the ALJ's hearing decision. Docket 9, p. 133. She has a high school education. Docket 9, p. 142. She was previously employed as an industrial truck operator, a contour saw operator and a companion. Docket 9, p. 19. She claimed disability due to bipolar disorder and shoulder and knee pain, among other ailments. Docket 9, pp. 11-12, Finding No. 3.

The ALJ determined that plaintiff suffers from "severe" impairment of bipolar disorder, but she does not have impairments or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). Docket 9, p. 12-13, Finding No. 4. Relying on the examining medical source opinion of Dr. Paul Leonard, opinion evidence from Lydia Franklin, FNP[1], Sonya Elliott, Angulene Reed, along with the plaintiff's testimony and the record as a whole, the ALJ concluded that plaintiff retained the Residual Functional Capacity (RFC) to perform the full range of work at all exertional levels, but with the following non-exertional limitations:

> The claimant can perform simple routine repetitive tasks involving simple work related decisions and routine workplace changes. She can also maintain attention and concentration sufficiently to complete the simple routine repetitive tasks.

Docket 9, p. 13, Finding No. 5. The ALJ found the plaintiff's subjective complaints less than fully credible and her allegations of stringent functional limitations in activities of daily living

---

[1] The ALJ properly noted that a nurse practitioner is not considered an "acceptable medical source" within the regulatory definition of the Social Security Act (20 CFR 404.1513(a)), but he nevertheless considered her opinions to the extent that they were substantiated by the findings of acceptable medical sources.

were "not limited to the extent one would expect, given [plaintiff's] complaints of disabling symptoms and limitations."[2]  Docket 9, p. 14.  In support of this credibility finding, the ALJ referred to the report of the plaintiff's mental status examination with Dr. Leonard, as well as a complete lack of objective medical evidence that plaintiff sought or received treatment for her claimed physical impairments and the plaintiff's own testimony and other evidence about her activities of daily living, all of which demonstrated that despite her drowsiness, she is capable of functioning at a level that is not as limited as one might expect given the extent of her complaints of disabling symptoms and limitations.[3]  *Id.* at 14-15.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments did not prevent her from performing work-related activities as an industrial truck operator, a field supervisor/community health nurse nursing supervisor, and a companion/sitter, and she could return successfully to her past relevant work.  Docket 9, p. 16, Finding No. 6. Therefore, she was "not disabled" under the Act.  Docket 9, p. 16, Finding No. 7.

The plaintiff requested review of the decision by the Appeals Council.  Docket 9, p. 1-4. After reviewing the record, including the request for review submitted by counsel for the plaintiff, the Appeals Council denied plaintiff's request for review because the information did not provide a basis for changing the ALJ's decision.  *Id.*  Plaintiff now appeals to this court claiming that the

---

[2]Despite claiming her medication makes her too drowsy to work, plaintiff continues to take the medication and has not reported the drowsiness to any medical professional or asked for another substitute medication.  Docket 9, p. 14.

[3] Although the plaintiff testified that she is unable to work as the result of her bipolar disorder and the side effects of her medication, the evidence shows that she sought treatment only one time from Communicare after her hospitalization in 2008 and that her reason for not returning was that the psychiatrist "wasn't helping me any."  Docket 9, p. 39.  However she has never sought treatment from another mental health professional.  Docket 9, p. 14.

ALJ erred by failing to find that the plaintiff had a severe physical impairment, failing to fully develop the record by ordering a consultative physical examination, finding an RFC was in conflict with the information she provided to the VE and concluding that plaintiff could return to her past work as a industrial truck operator, a contour saw operator and a homemaker/sitter in light of SSR 82-62. Docket 12.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[4] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[5] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[6] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[7] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[8] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the

---

[4] *See* 20 C.F.R. § 404.1520 (2010).

[5] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[6] 20 C.F.R. § 404.1520(b) (2010).

[7] 20 C.F.R. § 404.1520(c)(2010).

[8] 20 C.F.R. § 404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

physical and mental demands of her past relevant work.[9]  At step five, the burden shifts to the

Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

past work experience, that she is capable of performing other work.[10]  If the Commissioner proves

other work exists which plaintiff can perform, plaintiff is given the chance to prove that she

cannot, in fact, perform that work.[11]

The court considers on appeal whether the Commissioner's final decision is supported by

substantial evidence and whether the Commissioner used the correct legal standard.  *Crowley v.*

*Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993);

*Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  It is the court's responsibility to scrutinize

the entire record to determine whether the ALJ's decision was supported by substantial evidence

and whether the Commissioner applied the proper legal standards in reviewing the claim.

*Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983).  The court has limited power of review

and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[12] even

if it finds that the evidence leans against the Commissioner's decision.[13]  In the Fifth Circuit

substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Crowley v.*

*Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted).  Conflicts in the evidence are for the

---

[9]20 C.F.R. § 404.1520(e) (2010).

[10]20 C.F.R § 404.1520(g) (2010).

[11]*Muse*, 925 F.2d at 789.

[12]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[13]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994);  *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

<u>III. DISCUSSION</u>

1.    <u>Plaintiff's physical impairment</u>

Plaintiff alleges that the ALJ erred in finding that she did not have a severe physical impairment. Docket 12, pp. 7-13. Plaintiff quotes heavily from her own hearing testimony about her subjective complaints of knee, shoulder and rotator cuff pain and argues that having heard this testimony, the ALJ erred in declining to find it sufficient to conclude that these conditions constituted severe impairments. She contends that had the ALJ found a severe physical impairment, she could have ordered a consultative exam, *see Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), and that her failure to find a severe physical impairment renders the ALJ's findings "inadequate" and "not based on substantial evidence." Docket 12, p. 13.

A plaintiff's subjective complaints must be corroborated, at least in part, by objective evidence. *See Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991). The ALJ noted that there is no medical evidence in the record relating to lower extremity pain and that the only evidence related to her rotator cuff/shoulder pain is the plaintiff's testimony that she underwent physical therapy in the 1990's. Docket 9, pp. 9, 15, 33, 202. Further, the plaintiff's only medical treatment for any

physical ailment was treatment for a spider bite in May 2010. Docket 9, 243-245. The evidence

in this case simply does not corroborate the plaintiff's complaints of physical pain and disability.

Although plaintiff points to her own testimony to substantiate her claims of physical

impairment, she also testified that medication ("Biofreeze") eased her knee and shoulder pain.

On the day of the hearing she exhibited signs, and agreed that, she had easy mobility in her

shoulder; she also testified that she can lift and carry a gallon of milk and does some light house

cleaning and washing dishes. Docket 9, p. 28, 32, 42- 44. In other words, in addition to a

complete lack of objective medical evidence, there is also substantial evidence directly from the

plaintiff to support the ALJ's determination that plaintiff does not have any severe physical

impairments. *See Leggett v. Chater,* 67 F.2d 558, 565, n.12 (5th Cir. 1995). Absent corroborating

objective evidence, the ALJ cannot find a severe impairment based on plaintiff's subjective

complaints, particularly not where there exists equal evidence by the plaintiff of lack of physical

impairment. The plaintiff's testimony alone cannot by itself satisfy the medical component of the

statutory standard. 20 C.F.R. §§ 404.1528(a), 404.1529. Accordingly, plaintiff's argument on

this point must fail.

     2.      The lack of a consultative examination of plaintiff's physical impairment

In this case, plaintiff's application identified "Schizo/bipolar disorder" as the illness,

injury or condition that limits her ability to work. Docket 9, pp. 134, 162. She argues on appeal

that the ALJ had a duty to develop the record and should have ordered a consultative physical

evaluation relating to her complaints of shoulder, knee and rotator cuff pain. Docket 12, pp. 13-

16.

Under the applicable regulations, if the plaintiff does not provide sufficient medical or

other evidence, the secretary is required to make a decision based on the information available. See 20 CFR § 404.1516 (1986). Under certain circumstances, however, a consultative examination is required to develop a full and fair record. 20 CFR § 404.1517 (1986). The decision to require such an examination is discretionary. *See Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir. 1987). In *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir.1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." (emphasis in original). See also *Gannon v. Astrue,*2008 WL 4490738 *11 (N.D. Tex. 2008).

Because no evidence, other than plaintiff's testimony at the hearing, even mentions Burnside's claimed physical pain or impairment, the ALJ had no reason to find a consultative exam necessary to look into an alleged physical impairment. An ALJ is under no duty to order a consultative evaluation unless "the claimant presents evidence sufficient to raise a suspicion concerning [an] impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). As stated above, the evidence in this case did not corroborate the plaintiff's subjective complaints of pain. With the exception of treatment for a spider bite, plaintiff did not receive any treatment for physical pain during the relevant time period. Accordingly, the court finds that there exists no evidence in the record that would "raise a suspicion concerning a non-exertional impairment," and the plaintiff's argument on this issue is without merit.

    3.    <u>Determination of plaintiff's RFC and testimony by the VE</u>

The ALJ found that the plaintiff retained the RFC to perform the full range of work at all exertional levels, but with the following non-exertional limitations:

The claimant can perform simple routine repetitive tasks involving simple work related decisions and routine workplace changes. She can also maintain attention and concentration sufficiently to complete the simple routine repetitive tasks.

Docket 9, p. 13, Finding No. 5. Her decision was based on the record as a whole and was supported by the VE's testimony that an individual with the same RFC as plaintiff could perform her past relevant work as an industrial truck operator, a contour saw operator, and a companion. Docket 9, pp. 50 - 53. At the hearing, the ALJ and the VE engaged in the following exchange:

Q.   Okay. Please consider an individual of the claimant's age, education and work history. The individual would be able to perform work at all exertional levels. Simple routine repetitive tasks involving simple work related decisions and routine work place changes. And the individual would be able to maintain attention and concentration sufficiently to complete the simple routine repetitive tasks. Would the individual be able to perform claimant's past work?

A.   Your Honor, it would be my opinion that such individual would be able to complete jobs as a forklift operator, as a contour saw operator, as a homemaker and a sitter under that hypothetical. I would thing the nursing supervisor job would be precluded.

. . . .

Q.   Okay. And is that consistent with the information in the Dictionary of Occupational Titles?

A.   It was, Your Honor, with the exception of exertional level on one of the jobs. The forklift operator was coded as medium in the DOT *but would have been light as she performed it.*

Docket 9, pp. 50-51 (emphasis the court's).

Plaintiff contends that all of the past relevant work that the ALJ found plaintiff was capable of performing was either skilled or semi-skilled in nature; thus, says plaintiff, the ALJ's non-exertional limitation to "simple routine repetitive tasks involving simple work-related

decisions and routine workplace changes" contradicts the RFC finding and would preclude the referenced jobs.  Docket 12, pp. 6-7.  Plaintiff's argument, however fails to recognize that the VE clearly considered the fact that the jobs could be performed at levels as outlined in the DOT or with the variations outlined by the ALJ and determined plaintiff was capable of performing her past work.  *See* Docket 9, pp. 50-53.

The vocational expert is, by definition, an expert in vocational matters and is qualified to make findings relating to work related conditions, attributes and skills necessary to perform all demands of work.  *See* 20 C.F.R. §404.1560(b)(2).  The requirements listed in the Dictionary of Occupational Titles ("DOT") are the maximum requirements for a position – not the range of requirements – of a particular job as it is performed in a specific setting.  *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995).  The Fifth Circuit has held that when a VE's testimony conflicts with the DOT, "the ALJ may rely on the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir.2000).   Further, "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145; *see also Laurent v. Astrue*, 366 F. Appx 559, 561 (5th Cir. 2010).

The plaintiff cites only to the DOT to support her argument that the VE's testimony was unreliable.  Absent objective proof that plaintiff cannot perform her past work as stated by the VE, the court holds that the ALJ's RFC determination did not conflict with the hypothetical question posed to the VE or the VE's opinion regarding plaintiff's work capabilities.  Further, the fact that the plaintiff's past work is classified in the DOT as skilled and semi-skilled, but her RFC

limitations call for simple work does not equal error. *Laurent*, 366 F. Appx. at 561.  Accordingly, the court finds that ALJ properly relied on the VE's testimony, and her finding at step four that the plaintiff was capable of performing her past relevant work as an industrial truck operator, contour saw operator, and companion was supported by substantial evidence and should be affirmed.

4. <u>The ALJ's determination that plaintiff could return to her past work was improper in light of SSR 82-62</u>

Plaintiff argues that the ALJ's conclusion that plaintiff could return to her past relevant work did not provide the specific findings or analysis of the physical and mental demands of plaintiff's past relevant work as required by Social Security Ruling ("SSR") 82-62.  Docket 12, pp. 17-18.  SSR 82-62 outlines the policies and procedures for determining a claimant's capacity to do her past relevant work.  *Social Security Ruling: Program Policy Statement Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General,* SSR 82-62, 1982 WL 31386, at *4 (S.S.A. Nov. 30, 1981).  When deciding whether a claimant retains the RFC to perform her past relevant work, the ALJ can look to either (1) the job duties peculiar to an individual job as the claimant actually performed it or (2) the functional demands and job duties of the occupation as generally required by employees throughout the national economy. *Id.*, at *1-2.  Generally, the claimant is the primary source for vocational documentation, and her statements about her past work are sufficient for determining the skill level and the exertional and non-exertional demands of her past work. *Id.* at *3.  The plaintiff claims that the ALJ failed to outline all the specific demand of the plaintiff's past relevant work, but rather "summarily concluded" that she could return to those jobs.  Docket 12, p. 17.

Here, the ALJ did not rely solely on just the plaintiff's descriptions of her past relevant

11

work or just the description of the jobs as performed in the national economy; she looked to the plaintiff's testimony, and to the VE's testimony and to the record as a whole to determine plaintiff could perform some of her past relevant work. Any error by the ALJ was merely procedural and did not affect plaintiff's substantive rights. The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party are affected." *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam).

Because procedural errors in the disability determination process are considered prejudicial only when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision,[8] *Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir.1988), the question for the court is whether substantial evidence supports the ALJ's determination that plaintiff retained the mental RFC to perform her past relevant work. There is no doubt that substantial evidence supports the ALJ's decision in this case: the medical evidence in the record, plaintiff's own testimony and the VE's testimony all support her findings.

## IV. CONCLUSION

After thoroughly reviewing the evidence presented to the ALJ and to the Appeals Council and the record as a whole, this court holds that the ALJ's opinion was supported by substantial evidence, and the decision of the Commissioner should be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 18th day of December, 2012.

 /s/ S. Allan Alexander                          
UNITED STATES MAGISTRATE JUDGE

12